IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ISHMAEL ALI BURK, JR., | |
|---|---|
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 18-04702 |
| MISS BUDD, *et al.*, | |
| *Defendants*. | |

**PAPPERT, J.**                                                                                       August 9, 2019

## MEMORANDUM

*Pro se* plaintiff Ishmael Burk sued Bucks County Correctional Facility, Lillian Budd, Michael Gallagher, Paul Lagana, Kelvin Prince, and two John Does for violating his rights under 42 U.S.C. § 1983. The Court dismissed all claims against Bucks County Correctional Facility as legally baseless. *See* (Order, ECF No. 10). The remaining named Defendants moved to dismiss all claims against them for failure to state a claim. The Court grants in part and denies in part the Defendants' Motions for the reasons that follow.

I

Burk was incarcerated at BCCF from June 26, 2017 to February 2018. *See* (Sec. Am. Compl. ¶ 7, ECF No. 42). He alleges that Correctional Officers Prince and Bombay[1] and Warden Lagana subjected him to strip searches at least three times a week as retaliation for his criminal case involving a police officer. (*Id.* at ¶¶ 1, 10.) He

---

[1] Burk identified Officer Bombay as one of the John Does from his initial Complaint in a letter to the Court on April 1, 2019. *See* (Mot., ECF No. 32). Because Burk did not name Bombay in the caption of his Second Amended Complaint, Bombay was never served.

1

claims that Bombay "said that he seen my case on TV and I will be living through hell while I am in BCCF," and "this is for the officers you hurt." (*Id*. at ¶ 2.) Burk alleges that the officers sexually abused him during those searches. He claims that Officer Bombay "grabbed his butt" and inserted his fingers in Burk's rectum. (*Id*.) Burk asked Bombay to stop but Bombay allegedly said that if Burk told anyone he would make it more hurtful for Burk. (*Id*.) Burk claims that because of these searches he still bleeds from his rectum when he uses the bathroom. (*Id*. at ¶ 9.)

Burk informed Assistant Warden Budd and Gallagher about the strip searches and "lack of showers I was getting." (*Id*. at ¶¶ 4–5.) He alleges that "Miss Budd would make trips to the RHU Unit . . . so I told her face to face what was going on I told her why I think I was being abused and harassed because of my criminal case." (*Id*. at ¶ 4.) Budd told him to write to her with his complaints. (*Id*.) Burk wrote to her on multiple occasions, but Budd said that he was "late in telling her what [happened]." (*Id*.) Burk also wrote to Gallagher about "the abuse & lack of shower & about the lack of medical attention," but Burk never heard from Gallagher. (*Id*. at ¶ 5.)

Burk filed his Complaint on October 31, 2018, (ECF No. 2), and amended it on January 8, 2019, (ECF No. 9). On March 6 and March 29, 2019, Defendants moved to dismiss Burk's Amended Complaint. (ECF Nos. 27 and 31.) Burk then moved to file a Second Amended Complaint. *See* (ECF Nos. 32, 33, 34, and 39). Along with his Motions, Burk sent numerous letters to the Court, including new factual allegations not contained in his Amended Complaint. The Court granted Burk's request for leave to file a Second Amended Complaint on May 2, 2019 and instructed Burk to include all factual allegations therein. (ECF No. 41.) Burk filed a Second Amended Complaint on

May 15, 2019, (ECF No. 42), and the Court denied the pending motions to dismiss as moot. (ECF No. 44.) Defendants moved to dismiss his Second Amended Complaint on May 29, 2019. (ECF Nos. 45 and 46.)

II

A

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

3

B

Because Burk is proceeding *pro se*, the Court "must liberally construe his pleadings." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citation omitted). "Courts are to construe complaints so 'as to do substantial justice,' keeping in mind that *pro se* complaints in particular should be construed liberally." *Bush v. City of Phila.*, 367 F. Supp. 722, 725 (E.D. Pa. 2005) (quoting *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004)). Moreover, in a § 1983 action, the Court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution."). At the same time, *pro se* litigants "must allege sufficient facts in their complaints to support a claim . . . At the end of the day, they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

III

Defendants first argue that Burk failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they

4

allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner exhausts his administrative remedies if he complies with the grievance procedures and rules. *See Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Id.* at 227–32; *see also Nyhuis v. Reno*, 204 F.3d 65, 77–78 (3d Cir. 2000).

"Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265, 268 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 216–17 (2007)). Dismissal under Rule 12(b)(6) for the plaintiff's failure to exhaust is appropriate only where it is apparent from the face of the complaint that the plaintiff failed to exhaust. *Thomas v. Brinich*, 579 F. App'x 60, 62 (3d Cir. 2014) (citing *Jones*, 549 U.S. at 215–16).

To decide a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). "However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Id.* (internal quotations omitted). Courts may also "consider [an] exhibit[ ] attached to a defendant's motion to dismiss if it is 'an undisputedly authentic document' and [the] 'plaintiff's claims are based on the document.'" *Grp. Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (quoting *Pension*

5

*Benefit Guaranty Corp.*, 998 F.2d at 1196). Accordingly, a court may consider grievance records on a motion to dismiss "where a defendant moves to dismiss based on a failure-to-exhaust defense and 'the exhaustion issue turns on indisputably authentic documents related to [the inmate's] grievances.'" *Rinaldi v. United States*, 904 F.3d 257, 261 n.1 (3d Cir. 2018) (quoting *Spruill*, 372 F.3d at 223). Declarations from prison officials, however, "are evidentiary materials that cannot be considered on a motion to dismiss." *Berry v. Klem*, 283 F. App'x 1, 4 (3d Cir. 2008) (citing *Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000)).

Defendants contend that Burk did not exhaust his administrative remedies because he failed to appeal the denial of his grievance. (Mot. Dismiss 6–7, ECF No. 45.) Defendants attach to one of their motions a grievance allegedly filed by Burk and an affidavit from Assistant Warden Budd stating that "Burk did not file an appeal, timely or otherwise, to the first level response." (*Id.* at Exs. A and 1.)

The Court may not consider declarations from prison officials in deciding a motion to dismiss. Moreover, there is no evidence that the Court can consider at this stage that shows the attached grievance is the only grievance Burk filed and that he did not file an appeal. *See Haynes v. Nwachukwi*, No. 3:18-CV-01837, 2019 WL 2721165, at *5 (M.D. Pa. May 6, 2019), *report and recommendation adopted sub nom. Haynes v. Prince*, No. CV 3:18-1837, 2019 WL 2724052 (M.D. Pa. June 28, 2019). As such, the issue of administrative exhaustion is better suited for a motion for summary judgment. *See McIntyre v. Kellinger*, No. 1:14-CV-1425, 2015 WL 5342817, at *4 (M.D. Pa. Sept. 14, 2015).

IV

Burk asserts claims under § 1983 for violations of the Fourth and Eighth Amendments. To state a claim under § 1983, Burk must allege that a person acting under color of law deprived him of a federal right. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995). Burk must also show that the person acting under color of law "intentionally" violated his constitutional rights or acted "deliberately indifferent" in violation of those rights. *See, e.g.*, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843–44 (1998); *Brower v. Cty. of Inyo*, 489 U.S. 593, 596 (1989) (citing *Hill v. Cal.*, 401 U.S. 797, 802–05 (1971)); *see also Berg v. Cty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000).

A

Burk asserts claims under the Fourth Amendment for unlawful strip searches while incarcerated. Determining whether a search or seizure is reasonable for the purposes of the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). Prison inmates retain certain protections under the Fourth Amendment despite their incarcerated status, including the right to bodily privacy. *Parkell v. Danberg*, 833 F.3d 313, 326 (3d Cir. 2017). While this right is very narrow, *see id.*, "not all strip search procedures will be reasonable; some could be excessive, vindictive, harassing, or unrelated to any legitimate penological interests." *Brown v. Blaine*, 185 F. App'x 166, 169 (3d Cir. 2006) (quoting *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988)). Nevertheless, even if a strip search is unnecessary, "there is no Fourth Amendment violation if plaintiff cannot show that the strip search [was]

conducted in an unreasonable manner." *Barber v. Jones*, No. 12-2578, 2013 WL 211251, at \*8 (D.N.J. Jan. 18, 2013).

Burk alleges that he was strip searched three times a week over a period of nine months by Officers Prince and Bombay and Warden Lagana. *See* (Sec. Am. Compl. ¶¶ 1–3, 9). He claims that the strip searches were conducted as retaliation for "the criminal case I caught with the police officer back in 2017." (*Id.* at ¶ 10.) Burk also contends that the strip searches were conducted in an excessive and vindictive manner, with the officers putting their fingers in Burk's rectum, causing him permanent damage and injury. Because the searches as plead could be found to be unreasonable and unrelated to a legitimate penological goal, Burk has stated a Fourth Amendment claim against Officers Prince and Bombay and Warden Lagana.

Construing the Complaint liberally, Burk also seeks to hold Budd and Gallagher liable under a supervisory theory of liability. While "[g]overnment officials may not be held liable [under § 1983] for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*," there are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First. Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds Taylor v. Barkes*, 135 S. Ct. 2042 (2015). Supervisor-defendants may be liable if they were personally involved in the constitutional violation, *i.e.* they participated in it, directed others to commit it or had actual knowledge of and acquiesced in it. *Id*. Supervisor-defendants may also be liable if "they, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the

8

constitutional harm.'" *Id*. (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)).

Here, Burk claims that he informed Budd about the strip searches during personal conversations with her. He alleges that he talked to Budd "face to face" about the abuse and harassment. (Sec. Am. Compl. ¶ 4.) Burk also claims that he filed a "green slip" describing the allegations to Budd, but Budd did nothing to stop the searches from continuing. (*Id*.) Viewing the facts in a light most favorable to Burk, these allegations are sufficient to establish that Budd was personally involved in the constitutional violation through her actual knowledge and acquiescence. *See, e.g.*, *Shaw v. Nutter*, No. 16-1209, 2017 WL 895584, at *4 (E.D. Pa. Mar. 6, 2017) (finding allegation that prison warden made tours of the prison and spoke with the plaintiff concerning the plaintiff's complaint sufficient to plead knowledge and acquiescence).

However, Burk has not plead sufficient facts to hold Gallagher liable under a supervisory theory. The only fact Burk alleges regarding Gallagher's personal involvement is that Burk sent letters to Gallagher, but never heard back from him. *See* (Sec. Am. Compl. ¶ 5). This is not sufficient to demonstrate knowledge and acquiesce of the constitutional violation. *See Shaw*, 2017 WL 895584, at *4 (citing *Smith v. Danberg*, No. 07-476, 2010 WL 2400468, at *5 (D. Del. June 15, 2010) (observing that a plaintiff's allegation that he sent letters to defendants regarding a prison condition was not enough to show actual knowledge) and *Bullock v. Horn*, No. 3CV991402, 2000 WL 1839171, at *5 (M.D. Pa. Oct. 31, 2000) ("Merely asserting that Plaintiff sent letters to these two defendants will not suffice. Indeed, it would be anomalous to suggest that a prisoner could name as a Defendant any governmental official whatsoever, no matter

9

how far removed in the chain of authority from the actual conduct in question, simply by sending that official a letter.")). Moreover, Burk does not plead that Gallagher acted with deliberate indifference in establishing and maintaining a policy, practice, or custom which directly caused Burk's constitutional harm. *See Brown v. May*, No. 16-1873, 2017 WL 2178122, at *2 (E.D. Pa. May 17, 2017).

B

Burk asserts that his Eighth Amendment rights were violated based on sexual abuse by prison officials. The Eighth Amendment guarantees the right to be free from "cruel and unusual punishments" while in custody. *Whitley v. Albers*, 475 U.S. 312, 318 (1986) (quoting U.S. CONST. AMEND. VIII). A properly stated Eighth Amendment claim must allege a subjective and objective element. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). First, it must appear from the complaint that the defendant official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Second, the conduct must have been objectively "harmful enough," or "sufficiently serious" to violate the Constitution. *Id.* at 298.

The Third Circuit Court of Appeals recently joined other circuits in holding that sexual abuse of prisoners by prison officials can violate the Eighth Amendment. *See Ricks v. Shover*, 891 F.3d 468 (3d Cir. 2018). In *Ricks*, the court did not adopt a bright-line rule as to when sexual contact violates the Eighth Amendment, instead instructing district courts to conduct a "contextual, fact-specific" analysis, which considers "[t]he scope, place, and timing of the offensive conduct." *Id.* at 478. The court explained that "a single incident, if sufficiently serious or severe, can run afoul of the Eighth Amendment as surely as can multiple, less egregious incidents." *Id.* at 477. For the

objective component of the Eighth Amendment analysis, the *Ricks* court noted that "it goes without saying that objectively serious sexual contact would include sexualized fondling, coerced sexual activity, combinations of ongoing harassment and abuse, and exchanges of sexual activity for special treatment or to avoid discipline." *Id.* at 478. With respect to the subjective component, the court considered "whether the official had a legitimate penological purpose or if he or she acted 'maliciously and sadistically for the very purpose of causing harm," explaining that "a desire to humiliate the inmate or gratify the officer—inferred through the officer's conduct—is a reasonable way to distinguish between invasive touching that is permitted by law to ensure safety and which is not." *Id.* at 476.

Burk claims that he was sexually abused over a period of nine months. Specifically, he asserts that Officer Bombay grabbed his butt and stuck his fingers in Burk's rectum on numerous occasions. He alleges that Officer Bombay abused him in retaliation for his criminal case, not for any penological purpose. Because Burk has met both the objective and subjective requirements, he has stated a plausible Eighth Amendment claim against Officer Bombay. *See Belback v. Barner*, No. 2:17-CV-1222, 2018 WL 1382638, at *2 (W.D. Pa. Mar. 19, 2018).

While Burk makes general allegations about Prince's and Lagana's involvement in the sexual abuse, he has not alleged specific facts to suggest that Prince or Lagana directly participated in the abuse. However, he states that Prince and Lagana were present during some of the incidents and seems to argue that they should be held liable based on their apparent knowledge of the misconduct and failure to intervene. "An officer's failure to stop an ongoing constitutional violation violates the Eighth

11

Amendment when [the officer] 'had a reasonable opportunity to intervene and simply refused to do so.'" *Ricks*, 891 F.3d at 479 (quoting *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002)). Viewed in the light most favorable to Burk, Prince and Lagana had the opportunity to stop Bombay from assaulting Burk but did not do so. Burk therefore has adequately plead an Eighth Amendment claim against Prince and Lagana for failure to intervene. *Id*.

Burk also seeks to hold supervisors Budd and Gallagher liable under a supervisory theory of liability. Burk has alleged sufficient facts to show Budd had knowledge of and acquiesced in Bombay's alleged sexual abuse for the reasons stated above, *see* Section IV(A). Burk has not alleged sufficient facts to show Gallagher was personally involved in the Eighth Amendment violation. *See* (*id*.).

C

Burk also argues that Defendants violated his Eighth Amendment rights by failing to provide him with adequate medical care. A prisoner's right to be free from cruel and unusual punishment is violated where a prison official is deliberately indifferent to a prisoner's serious illness or injury. *See Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference "requires obduracy and wantonness . . . which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted). A medical need is serious if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Prison medical personnel may be found to have acted with deliberate indifference where they "prevent[ed] an inmate from receiving recommended treatment for serious medical needs." *Id.* at 346–47. A prison official acts with deliberate indifference to a serious medical need "when he knows of and disregards an excessive risk to inmate health or safety." *Brown v. Thomas*, 172 F. App'x 446, 450 (3d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Burk alleges that he received "a lack of medical attention" and that "my medical needs were violated because of all the body searches and bleeding to my rectum." (Sec. Am. Compl. ¶ 8.) Such allegations are insufficient to state an Eighth Amendment claim for failure to provide medical care against the prison officials. Burk does not allege that any of the defendants knowingly disregarded an excessive risk to his health or safety.

D

Finally, Burk also claims that "he wasn't allowed a shower," which the Court construes as another Eighth Amendment claim. While an inmate must be able to maintain his hygiene while imprisoned, "[t]he Eighth Amendment does not require that inmates receive frequent showers." *Difillipo v. Vaughn*, 1996 WL 355336, at *5 (E.D.Pa. June 24, 1996) (citation omitted). "Courts have generally held that a temporary deprivation of the opportunity to shower does not violate the Eighth Amendment." *Harris v. Barone*, No. 1:11-CV- 256, 2014 WL 2694005, at *6 (W.D. Pa. June 13, 2014) (*citing Fernandez v. Armstrong*, No. 02–2252, 2005 WL 733664, at *6 (D.Conn. Mar. 30, 2005); *see also Coleman v. Hodges*, No. CV 18-1152, 2018 WL 6618459, at *8 (W.D. Pa. Nov. 30, 2018), *report and recommendation adopted*, No. CV

13

18-1152, 2018 WL 6618408 (W.D. Pa. Dec. 18, 2018) (citing *Barnes v. County of Monroe*, 85 F. Supp. 3d 696, 738–39 (W.D.N.Y. 2015) ("To the extent Plaintiff alleges that his inability to shower over the course of four days constitutes a constitutional deprivation, his claim must fail. Even a two-week suspension of shower privileges does not constitute a denial of 'basic hygienic needs.'")); *Briggs v. Heidlebaugh*, No. 96–3884, 1997 WL 318081 *3 (E.D.Pa. May 22, 1997) (holding that suspension of shower privileges for two weeks did not violate the Eighth Amendment).

Burk alleges that "he wasn't allowed a shower" and that "CO Prince would also not let me get any showers." It is unclear whether Burk is contending that he was periodically denied a shower or was denied the right to shower during the entirety of his time at BCCF. Construing Burk's allegations liberally, the Court will allow Burk's Eighth Amendment claim for lack of shower access to proceed to discovery.

V

Defendants also argue that the claims should be dismissed based on qualified immunity. Qualified immunity shields government officials from civil liability on such claims "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Although qualified immunity is an affirmative defense, "a complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense appears on its face." *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001). To assess this defense, courts ask: "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the

14

violation." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

As discussed above, Burk has sufficiently alleged plausible Fourth and Eighth Amendment violations. To determine whether the constitutional rights were "clearly established" at the time of the misconduct, "it is not necessary that there have been a previous precedent directly in point." *Good v. Dauphin Cty. Soc. Servs. for Children & Youth*, 891 F.2d 1087, 1092 (3d Cir. 1989). "The ultimate issue is whether, despite the absence of a case applying established principles to the same facts, reasonable officials in the defendants' position at the relevant time could have believed, in light of what was in the decided case law, that their conduct would be lawful." *Id.*

Therefore, "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." *Newland v. Reehorst*, 328 Fed.Appx. 788, 791 n.3 (3d Cir. 2009); *see also Miller v. Reading Police Dep't*, No. CV 18-5178, 2019 WL 2491298, at *5 (E.D. Pa. June 13, 2019); *R.L. by & through Lordan v. Cent. York Sch. Dist.*, No. 1:14-CV-00450, 2014 WL 12737629, at *7 (M.D. Pa. Oct. 15, 2014) ("[T]he Supreme Court has indicated multiple times that trial court judges should resolve questions of qualified immunity at the summary judgment stage."). The Court cannot say at this stage that reasonable officials in the Defendants' positions could have believed, in light of prior judicial decisions that their conduct would be lawful. Because the factual record is insufficiently developed, the Court declines to address Defendant's qualified immunity arguments but will allow Defendants to raise the arguments at a later time. *See id.*

## VI

"[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *see also Alston*, 363 F.3d at 235; *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). The Court has provided Burk with two separate opportunities to amend his Complaint, but will not allow him to try a third time.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.